IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARISAM LLC, and<br>MAGNIFICENT BABY L.L.C.,<br><br>                    Plaintiffs,<br><br>v.<br><br>STYS, LLC d/b/a BABYNETIC<br><br>                    Defendant. | Civil Action No.  1:24-cv-7342 |

## COMPLAINT AND JURY DEMAND

Plaintiffs Arisam LLC ("Arisam") and Magnificent Baby L.L.C. d/b/a Magnetic Me ("Magnificent Baby" or "Magnetic Me") (collectively, "Plaintiffs") bring this civil action against Defendant STYS, LLC d/b/a Babynetic ("Babynetic" or "Defendant").

## INTRODUCTION

1.      Plaintiff Magnificent Baby is a leader in the magnet-enhanced clothing space, providing an easy and safe way for babies, children and adults to dress.

2.      Plaintiff Arisam owns and licenses various trademarks to Magnificent Baby.

3.      In business for over 13 years, Magnetic Me has become well-known for its original, authentic, and distinctive magnetic-enhanced clothing, catering to needs like fuss-free dressing, easier nursing, and independence for those with limited mobility.  Magnetic Me has worked tirelessly to develop its business, and through its investment of time, effort, and resources, has grown significantly.  Magnetic Me has developed substantial goodwill in the marks that it uses to advertise and promote its products and services, including, but not limited to: PARENTING IS NO SNAP, BABY SHOWER HERO, MAGIC OF MAGNETS, LET'S STICK TOGETHER, and LESS STRUGGLE, MORE CUDDLES ("the Marks").

4.     Recently, Plaintiffs learned that Babynetic is selling baby products with magnetic fasteners, copying many aspects of Magnetic Me's business and using, without permission, Plaintiffs' distinctive marks.  Babynetic's marketing and sale of products and services under Plaintiffs' trademarks is an attempt to piggyback off the popularity and renown of Magnetic Me, misappropriating Plaintiffs' trademarks, which are of critical importance to Magnetic Me's brand.  By this lawsuit, Magnetic Me seeks to protect its trademarks and goodwill and put an end to Babynetic's improper copying of Magnetic Me's business and trademarks.

## NATURE OF SUIT

5.     This is an action against Defendant for knowing and willful trademark infringement, false designation of origin and unfair competition in violation of the federal Lanham Act, 15 U.S.C. § 1125(a), New York Gen. Bus. Law § 349, and New York common law.

6.     Plaintiffs bring this lawsuit because Babynetic's blatant and willful infringement and unfair competition misappropriates Plaintiffs' valuable marks and deceives the public. Plaintiffs seek injunctive relief, damages, disgorgement of Babynetic's profits, punitive damages, and recovery of Plaintiffs' attorneys' fees and costs.

## THE PARTIES

7.     Plaintiff Arisam is a limited liability company organized and existing under the laws of the State of Delaware.  Arisam has a principal place of business at 209 W. 38th Street, Suite 501, New York, NY 10018.

8.     Plaintiff Magnificent Baby is a limited liability company organized and existing under the laws of the State of New York.  Magnificent Baby has a principal place of business at 209 W. 38th Street, Suite 501, New York, NY 10018.

9.      Defendant is a limited liability company organized and existing under the laws of the State of Texas.  Defendant maintains its principal place of business at 326 Wilchester Blvd., Houston, Texas 77079.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337 and 1338 because this action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

11.      This Court has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

12.      Babynetic operates an interactive web site at www.babynetic.com, which it uses to sell its products using the Infringing Marks (defined below) across the United States, including in the State of New York and, in particular, in this District.

13.      Babynetic's web site states: "We offer standard shipping for orders within the contiguous US (not including Hawaii, Alaska, Virgin Islands, and Puerto Rico)."

14.      Babynetic also sells its products nationwide through www.amazon.com.

15.      On information and belief, Babynetic has shipped a substantial amount of product to the State of New York, including to this District, in response to orders placed on its interactive web site, which features Infringing Marks, as well as through www.amazon.com.

16.      On information and belief, Babynetic has shipped a substantial amount of product to the State of New York, including to this District, in response to orders placed on its interactive web site, as well as through www.amazon.com, in boxes bearing one or more Infringing Marks such as PARENTING IN A SNAP and LET'S STICK TOGETHER.

17.     For example, on or about May 13, 2024, Magnetic Me personnel placed Order No. 171811820, within this judicial district, for a bib using Babynetic's interactive web site. Babynetic shipped the bib to this District. The ordered bib arrived in a box featuring the Infringing Marks PARENTING IN A SNAP and LET'S STICK TOGETHER.

18.     This Court has personal jurisdiction over Babynetic because Babynetic has knowingly targeted this District with its infringing acts, because a substantial part of the unlawful acts giving rise to Plaintiffs' claims occurred and continue to occur in this District, and because Babynetic conducts business in the State of New York and in this District. Babynetic has purposely availed itself of the benefits of doing business in the State of New York by advertising, promoting, offering for sale and selling its products using the Infringing Marks to consumers, including those located in this District, at least through its interactive website located at www.babynetic.com and via www.amazon.com, and by shipping products into this District in boxes bearing Infringing Marks. Babynetic is thus conducting business in New York and in this District, committing tortious acts in New York and in this District, and has wrongfully caused Plaintiffs and the public substantial injury within New York and within this District.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Babynetic is subject to personal jurisdiction in New York and is causing harm to Plaintiffs and consumers in this District by advertising, offering to sell and/or selling products using the infringed marks in this District, where a substantial part of the events giving rise to Plaintiff's claims occurred.

## **FACTUAL BACKGROUND**

### I.     **Plaintiffs and Their Distinctive Marks**

20.     For over a decade, Magnetic Me has been helping parents and others through its innovative and stylish clothing with magnetic snap faster solutions designed to make dressing easier.

21.     The company was founded by Lauren Levy and Lawrence Scheer, who have both worked tirelessly for over a decade as pioneers in building and growing the Magnetic Me brand for magnetic fastener enhanced clothing.  Magnetic Me offers for sale and sells its clothing products to consumers through its online website, at wholesale, and through individual stores, including, but not limited to, Saks Fifth Avenue, Bloomingdales, and Nordstrom.

22.     To indicate the source of Magnetic Me's products, Magnetic Me has adopted and continuously used various marks in interstate commerce in connection with the promotion, marketing, offer for sale and sale of its products and services.  For example, the following chart summarizes some of the marks that Magnetic Me has used in connection with its clothing products and services ("the Marks"):

| **MARK** | **FIRST USE IN COMMERCE** |
| --- | --- |
| PARENTING IS NO SNAP | At least as early as 2013 |
| BABY SHOWER HERO | At least as early as September 29, 2015 |
| MAGIC OF MAGNETS | At least as early as 2010 |
| LET'S STICK TOGETHER | At least as early as 2019 |
| LESS STRUGGLE, MORE CUDDLES | At least as early as December 2019 |

23.     Magnetic Me has continuously and exclusively used the Marks in interstate commerce in connection with its products and services, throughout the United States at least as early as the dates indicated in the chart above.

24.     Magnetic Me assigned all of its rights in and to the Marks, including all goodwill, to Arisam, but remains a licensee of the Marks and continues to use the Marks in interstate commerce pursuant to a license agreement.  Arisam is the owner of all right, title and interest in and to the Marks, including all goodwill associated with the Marks, through a valid assignment. Arisam has therefore acquired valid and enforceable trademark rights in the Marks.

25.     Over the years, Magnetic Me has prominently used and promoted the Marks through extensive advertising, marketing, and sale of goods and services in connection with the Marks.  As a result of this extensive advertising, continuous use, and promotion of the Marks, they are a recognizable symbol of the quality of goods and services provided by Magnetic Me.

26.     For example, Magnetic Me promotes the Marks through its website located at www.magneticme.com.  Through the website, consumers can, among other things, obtain information about Magnetic Me's products, shop for and order products from the website, or look for stores that carry Magnetic Me's products.

27.     Magnetic Me also promotes the Marks and products through advertisements that are sent by email to individuals who register to receive emails.

28.     Magnetic Me also actively promotes the Marks on social media, including Facebook, Instagram and TikTok.  Magnetic Me also has an MVP page on Facebook where it provides a community for its members to support one another.  As of September 27, 2024, Magnificent Baby's social media accounts reported the number of followers listed below:

| **Account** | **Number of Followers** |
| --- | --- |
| Instagram @magneticme | 162,000 |
| Facebook @magneticme | 40,000 |
| TikTok @magneticmebaby | 30,100 |
| Facebook Magnetic Me MVPs Page | 4,600 |
| Pinterest @magneticmebaby | 1,600 |

29.     Based on its common law rights, Magnetic Me acquired, and assigned to Arisam, all right, title and interest in and to the Marks, including goodwill associated with the Marks, in connection with Magnetic Me's products and services.  Through Magnetic Me's widespread reputation for quality and excellence, the Marks have become well-known in connection with Magnetic Me's clothing products and services.

**II.    Babynetic's Unlawful Conduct**

30.    According to information they supplied to the State of Texas, Jennifer Jones Zimmer and Ashley Houghtaling Gooch founded Babynetic on or about January 5, 2022. Babynetic advertises, promotes, offers for sale and sells baby products to consumers throughout the United States, including within this District, at least through its website, www.babynetic.com.

31.    On information and belief, in or around 2024, long after Magnetic Me commenced its continuous and prominent use of the Marks, and with actual and constructive knowledge of Magnetic Me's prior use of the Marks, Babynetic began using the following marks in connection with the advertising and promotion of its baby goods and services:  PARENTING IN A SNAP; LET'S STICK TOGETHER; MAGIC OF MAGNETS; BABY SHOWER HERO; and LESS TANTRUMS, MORE SMILES (collectively, the "Infringing Marks").

32.    For example, Babynetic advertises and promotes its products and services under the Infringing Marks both on its website (www.babynetic.com) and on its social media accounts, including, for example, on Instagram (@hellobabynetic), as well as on its packaging:

*Parenting In A Snap*





*Magic Of Magnets*



*Let's Stick Together*



Let's Stick Together

Tag @hellobabynetic to be featured here

*Baby Shower Hero*



*Less Tantrums, More Smiles*





33.     Babynetic's Infringing Marks are identical or nearly identical to the Marks.

34.     Both Babynetic and Magnetic Me utilize online and social media advertising in promotion of the respective goods and services.

35.     On information and belief, like Magnetic Me, Babynetic offers for sale and sells its goods online and through in-store retail stores.

36.     According to the Babynetic's website, magnetic onesies are "coming soon" and the website features a countdown clock for offering of magnetic onesies.  Babynetic's plan to offer for sale magnetic onesies in direct competition with Magnetic Me under the Infringing Marks further demonstrates Babynetic's already blatant disregard for Plaintiffs' rights, and must be stopped to avoid irreparable harm to Plaintiffs.

37.     It is not a coincidence that Babynetic has adopted and used all of the Infringing Marks.  On information and belief, Babynetic's Infringing Marks were purposely chosen to intentionally copy the Marks, as part of an effort to copy Magnetic Me's business model, and so as to confuse consumers as to the source of the products, or to suggest that Magnetic Me has sponsored or otherwise approved of the infringement, by mimicking the Marks.

38.     In addition to copying the Marks, Babynetic has also copied other elemements from Magnetic Me, including but not limited to Magnetic Me's "Frequently Asked Questions" section of its website.  As shown below, several questions and answers on Babynetic's website are virtually identical to the relevant portions of Magnetic Me's website:

**magnetic me.**

**Does exposure to magnets or magnetic fields cause people harm?**

No, according to the World Health Organization, exposure to static magnets has not been proven to have harmful (or positive) effects on people.

**Are your clothes and magnets safety tested?**

Yes. Our products go through a very thorough testing process, are independently safety tested by a consumer products safety testing bureau, and comply with all applicable children's product safety rules.

**Is it possible that your magnets could fall out and pose a safety threat to my child?**

We created an innovative, patented technology called SewSafe™ construction, where the magnets are sealed in a pouch, stitched into the product multiple times, and hidden between the layers of fabric—so that they are inaccessible to babies, toddlers, and children. It would take serious tampering to remove them. Periodically inspect seams and fabric near magnetic fasteners. If tears, rips, or loose stitching are found, contact us here.

**Babynetic™**

Does Exposure to Magnets or Magnetic fields cause Harm?                                                      ^

No, according to the World Health Organization, exposure to static magnets has not been proven to have harmful effects on people.

Are Babynetic's Products Safety Tested?

Yes. Our premium products go through a very thorough testing process, are independently safety tested by a consumer products safety testing bureau, and comply with all applicable children's product safety rules.

Safety is Our Number One Priority                                                                            ^

As parents ourselves, safety is our number one priority. Our patented magnetic closure ensures the magnet is completely enclosed in platinum grade silicone so that there is zero exposure to the magnet itself.

39.    In short, Babynetic brazenly copied from Magnetic Me.

40.     Babynetic has also utilized other elements from Magnetic Me's marketing campaigns.  As shown below, Babynetic recently used the phrase "We've Got You Covered" on its Instagram story/reel, which is a phrase that Magnetic Me has used throughout the years in, for example, the subject line of emails sent to its customers.



41.     Babynetic was well aware of Magnetic Me and its rights in the Marks when it began selling its products under the Infringing Marks – without license or consent from Plaintiffs.

42.     Since at least as early as 2018, Babynetic has known about Magnetic Me through emails and products that Babynetic's principals have ordered from Magnetic Me.

43.     Jennifer Zimmer signed up for Magnetic Me's emails on or around April 16, 2018 using the name "Jennifer Jones."  Jennifer Jones is Jennifer Zimmer's maiden name.  Over the last six years, Magnetic Me has sent Ms. Zimmer over two thousand emails, many of which she has opened.  Moreover, Ms. Zimmer has purchased at least 18 different items from Magnetic Me from 2018 through 2022.

44.     Ashley Gooch signed up for Magnetic Me's emails more recently, on or around May 11, 2024.  Ms. Gooch routinely opens the emails that she is sent from Magnetic Me.  On May 11, 2024, Ms. Gooch placed an order for a magnetic footie, which was shipped to her on or around May 13, 2024.

45.     On March 9, 2023, Babynetic applied to register with the Trademark Office the mark PARENTING IN A SNAP for "Beanies; Blouses; Dresses; Hats; Hoodies; Jeans; Pants; Shirts; Shoes; Shorts; Skirts; Socks; Sweaters; Underwear; Vests; Baby bodysuits; Baby tops; Outer jackets; Pajamas for babies, toddlers, and children; Shirts for infants, babies, toddlers and children; Shirts for babies, toddlers, and children; Shoes for babies, toddlers, and children; Shorts for babies, toddlers, and children; Sweaters for babies, toddlers, and children; Sweatpants for babies, toddlers, and children; Sweatshirts for babies, toddlers, and children; T-shirts for babies, toddlers, and children; Tee shirts; Tops as clothing for babies, toddlers, and children; Trousers for babies, toddlers, and children" in International Class 25 on an intent to use basis.  (U.S. Serial No. 97831962) (the "Application").  The Trademark Office subsequently issued U.S. Trademark Registration No. 7,509,403 for the mark PARENTING IN A SNAP on September 17, 2024.

46.     Prior to obtaining a registration, Babynetic falsely held out PARENTING IN A SNAP as a registered trademark, including on its boxes shipped into this District, even though the mark was not yet registered.

- 15 -

47.     Babynetic represented to the United States Patent and Trademark Office that it has been using the mark PARENTING IN A SNAP in connection with baby clothing since December 2023.  On information and belief this statement was false, as Babynetic has not yet launched its onesies that are the subject of the countdown on its web site.

## COUNT I – TRADEMARK INFRINGEMENT/UNFAIR COMPETITION
## UNDER 15 U.S.C. § 1125(a)

48.     Plaintiffs incorporate by reference and reallege all previous paragraphs as though fully set forth herein.

49.     Plaintiffs own and enjoy valid, enforceable and fully subsisting common law trademark rights in the Marks in New York and throughout the United States.  Magnetic Me has continuously used the Marks in commerce in connection with its goods and services, since at least as early as 2010 for MAGIC OF MAGNETS; 2013 for PARENTING IS NO SNAP; September 29, 2015 for BABY SHOWER HERO; 2019 for LET'S STICK TOGETHER; and December 2019 for LESS STRUGGLE, MORE CUDDLES.

50.     Babynetic has intentionally adopted and used, and is using, the Infringing Marks in commerce, without authorization or consent from Plaintiffs, in connection with the sale, offering for sale, distribution, and advertising of its baby products and services, in an attempt to trade upon Plaintiffs' goodwill.

51.     Babynetic's use of the Marks in commerce constitutes trademark infringement/false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), as it is likely to cause confusion, or to cause mistake, or to deceive consumers as to an affiliation, connection, or association between Plaintiffs and Babynetic, or as to the origin, sponsorship, or approval of Babynetic's goods and services by Plaintiffs.

52.     Babynetic's adoption and use of the Infringing Marks was done intentionally to copy from Plaintiffs, and thus was willful, in bad faith, and intended for the purpose of trading on Plaintiffs' reputation and goodwill.

53.     As a direct and proximate result of Babynetic's wrongful conduct, Plaintiffs hasve been, are now, and will continue to be irreparably injured and damaged by Babynetic's aforementioned acts, and unless Babynetic is enjoined by the Court, Plaintiffs will suffer further harm to their name, reputation and goodwill.  This harm constitutes an injury for which Plaintiffs have no adequate remedy at law.

54.     Plaintiffs are therefore entitled to appropriate relief as prayed for hereinafter, including injunctive relief.

55.     As a result of Babynetic's wrongful conduct, Plaintiffs are also entitled to recover monetary damages, including an accounting of Babynetic's profits, and costs, in an amount to be determined at trial.

56.     Babynetic's conduct was willful and intentional, making this an "exceptional case," entitling Plaintiffs to an award of their attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II – NEW YORK COMMON LAW TRADEMARK INFRINGEMENT

57.     Plaintiffs incorporate by reference and reallege all previous paragraphs as though fully set forth herein.

58.     Plaintiffs own and enjoy valid, enforceable and fully subsisting common law trademark rights in the Marks in New York and throughout the United States.  Magnetic Me has continuously used the Marks in commerce in connection with its goods and services, since at least as early as 2010 for MAGIC OF MAGNETS; 2013 for PARENTING IS NO SNAP; September 29, 2015 for BABY SHOWER HERO; 2019 for LET'S STICK TOGETHER; and December 2019 for LESS STRUGGLE, MORE CUDDLES.

59.     Babynetic's unauthorized use of the Infringing Marks in New York for its products and services infringes Plaintiffs' rights in its Marks, including their rights under New York common law, and is likely to cause consumer confusion.  Such unauthorized use constitutes trademark infringement under New York common law.

60.     Babynetic is willfully infringing the Marks with full prior knowledge of Plaintiffs' rights in the Marks.

61.     Babynetic's actions complained of herein will deceive the public as to the source of Babynetic's products and services and as to the existence of an affiliation between Plaintiffs and Babynetic.

62.     As a direct and proximate result of Babynetic's wrongful conduct, Plaintiffs have been, are now, and will continue to be irreparably injured and damaged by Babynetic's aforementioned acts, and unless Babynetic is enjoined by the Court, Plaintiffs will suffer further harm to their name, reputation and goodwill.  This harm constitutes an injury for which Plaintiffs have no adequate remedy at law.

63.     As a result of Babynetic's wrongful, willful, egregious, and intentional misconduct, Plaintiffs are also entitled to recovery of their actual damages, as well as exemplary and punitive damages pursuant to the common law of New York, and to recover their costs and reasonable attorneys' fees, in an amount to be determined.

## COUNT III – DECEPTIVE TRADE PRACTICES UNDER NEW YORK GEN. BUS. LAW § 349

64.     Plaintiffs incorporate by reference and reallege all previous paragraphs as though fully set forth herein.

65.     Babynetic has intentionally adopted and used the Infringing Marks in commerce, without authorization or consent from Plaintiffs, in connection with the sale, offering for sale, distribution and advertising of its products and services to consumers in New York, in an attempt to trade on Plaintiffs' reputation and goodwill.

66.     Babynetic's use of the Infringing Marks is willful and in bad faith and is likely to continue to cause confusion, mistake or deception as to whether Babynetic's products and services originate from, are associated, affiliated or connected with, or are sponsored, endorsed or approved by Plaintiffs.

67.     As a result of Babynetic's deceptive practices through use of the Infringing Marks, Plaintiffs have suffered harm to their reputation and the goodwill associated with the Marks.

68.     Babynetic's wrongful conduct will continue to cause injury to Plaintiffs, in violation of New York Gen. Bus. Law § 349, unless and until enjoined by this Court.

69.     As a result of Babynetic's wrongful, willful, egregious, and intentional misconduct, Plaintiffs are also entitled to treble damages under New York Gen. Bus. Law § 349 and to recover their costs and reasonable attorneys' fees, in an amount to be determined.

## COUNT IV – UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

70.     Plaintiffs incorporate by reference and reallege all previous paragraphs as though fully set forth herein.

71.     Babynetic has intentionally adopted and used the Infringing Marks in commerce, without authorization or consent from Plaintiffs, in connection with the sale, offering for sale, distribution and advertising of its products and services to consumers in New York, in an attempt to trade on Plaintiff's reputation and goodwill.

72.    Babynetic's use of the Infringing Marks is willful and in bad faith and is likely to continue to cause confusion, mistake or deception as to whether Babynetic's products and services originate from, are associated, affiliated or connected with, or are sponsored, endorsed or approved by Plaintiffs.  Such unauthorized use constitutes unfair competition under New York common law.

73.    As a direct and proximate result of Babynetic's wrongful conduct, Plaintiffs have been, are now, and will continue to be irreparably injured and damaged by Babynetic's aforementioned acts, and unless Babynetic is enjoined by the Court, Plaintiffs will suffer further harm to their name, reputation and goodwill.  This harm constitutes an injury for which Plaintiffs have no adequate remedy at law.

74.    As a result of Babynetic's wrongful, willful, egregious, and intentional misconduct, Plaintiffs are also entitled to recovery of their actual damages, as well as exemplary and punitive damages pursuant to the common law of New York, and to recover their costs and reasonable attorneys' fees, in an amount to be determined.

## **REQUEST FOR RELIEF**

WHEREFORE, by virtue of Babynetic's unlawful conduct as alleged in Counts I - IV of this Complaint, Plaintiffs respectfully request that this Court:

A.    Enter judgment that Babynetic, as a result of its unauthorized use of the Infringing Marks has infringed Plaintiffs' rights in the Marks and engaged in unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), New York Gen. Bus. Law § 349 and the common law of New York.

B.      Enter preliminary and permanent injunctions restraining Babynetic, as well as its officers, directors, employees, agents, affiliates, subsidiaries, divisions, successors, assigns, franchisees, licensees, and all those in privity or acting in concert with them from:

        1.   Manufacturing, distributing, shipping, advertising, marketing, promoting, selling or otherwise offering for sale products or services using the Infringing Marks or any other marks that are confusingly similar to the Marks;

        2.   Using or authorizing the use of the Infringing Marks or any reproduction, counterfeit, copy, or colorable imitation thereof, in any form, or in any manner, or otherwise infringing the Marks;

        3.   Otherwise unfairly competing with, injuring the business or reputation of, or damaging the goodwill of Plaintiffs; and

        4.   Otherwise falsely representing themselves or any of their products as being  associated or affiliated with, sponsored or endorsed by, or in any way connected  with Plaintiffs.

C.      Order that Babynetic destroy all products and advertising, packaging and promotional materials that bear the Infringing Marks;

D.      Order that Babynetic, as well as its respective officers, agents, servants, employees, attorneys, and those persons in active concert or participation with any of them, be directed to file with this Court and serve on Plaintiffs within thirty (30) days after service of the injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

E.      Order that, under Section 35 of the Trademark Act of 1946, 15 U.S.C. § 1117, an accounting be had and judgment rendered against Babynetic for both (1) the profits, gains, and advantage derived from its wrongful actions and (2) the damages sustained by Plaintiffs as a result of Babynetic's actions, including lost sales, price erosion, injury to goodwill, diminution of value  of the mark, corrective advertising, and reasonable royalties, and any actual damages with such amounts to be trebled as provided by law because of the willful and deliberate nature of Babynetic's actions;

F.      Order that Plaintiffs' recovery based on Babynetic's profits is inadequate, and enter judgment for an increased sum as the Court finds just, pursuant to 15 U.S.C. § 1117;

G.      Order that Plaintiffs be awarded punitive damages for Babynetic's willful, intentional, egregious and malicious acts of common law unfair competition and trademark infringement, and otherwise provided by New York common law.

H.      Order that, under Section 35 of the Trademark Act of 1946, 15 U.S.C. § 1117(a), Babynetic be required to pay Plaintiffs both the costs of this action and the reasonable attorneys' fees Plaintiffs have incurred in connection with this action;

I.      Award pre-and post-judgment interest at the maximum rate allowable by the law; and

J.      Grant Plaintiffs such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues raised in the Complaint that are properly

tried to a jury.

Date:  September 27, 2024

/s/ Michael N. Rader

Michael N. Rader
mrader@wolfgreenfield.com
Tonia A. Sayour
tsayour@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue, 25th Floor
New York, NY 10158
212.697.7890 Phone
617.646.8646 Fax

*Counsel for Plaintiffs*